IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL SAKUMA,<br><br>Defendant. | CR. NO. 12-00055 JMS<br><br>ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE UNDER FIRST STEP ACT (COMPASSIONATE RELEASE), ECF NO. 98 |

**ORDER DENYING DEFENDANT'S
MOTION TO REDUCE SETENCE UNDER FIRST STEP ACT
(COMPASSIONATE RELEASE), ECF NO. 98**

**I. INTRODUCTION**

Defendant Michael Sakuma ("Defendant"), moves, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), for compassionate release from Federal Correction Institute La Tuna ("FCI La Tuna"). The court determines Defendant has failed to show extraordinary and compelling reasons to warrant release, and even if he had, the court would deny the motion based on consideration of the applicable 18 U.S.C. § 3553(a) factors. Thus, for the following reasons, the Defendant's Motion for Compassionate Release is DENIED.

///

///

## II. <u>BACKGROUND</u>

Defendant, currently 58 years old, is incarcerated at FCI La Tuna with a projected release date of July 3, 2025. *See* https://www.bop.gov/inmateloc/ (last visited April 19, 2020).

On January 25, 2013, Defendant pled guilty to conspiring to distribute and possessing with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. *See* ECF Nos. 1, 66, 67. On May 28, 2013, Defendant was sentenced to a term of 240 months imprisonment, and a term of five years of supervised release. ECF No. 73. Based on a retroactive amendment to the United States Sentencing Guidelines ("Guidelines"), Defendant's sentence was reduced to 192 months imprisonment on July 20, 2015. ECF No. 90.

On July 6, 2020, Defendant submitted a request for Compassionate Release to FCI La Tuna's warden. ECF No. 98-3 at PageID # 806. That request was denied on July 22, 2020. *Id*. at PageID # 807. Defendant then filed the instant motion on March 29, 2021, and the Government filed its Response on April 13, 2021. ECF Nos. 98, 102. The court decides the motions without a hearing pursuant to Local Rule 7.1(c).

## III. **DISCUSSION**

### A. Legal Standard

Defendant moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, which provides as relevant:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
> . . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Thus, the court may reduce Defendant's sentence if: (1) Defendant has exhausted the required administrative remedies; (2) the court determines, after consideration of the applicable section 3553(a) factors, that Defendant has shown that "extraordinary and compelling reasons" warrant the reduction; and (3) the reduction is consistent with any applicable Sentencing Commission policy

statements. Here, the parties agree that Defendant has exhausted his administrative remedies.

The United States Sentencing Commission's policy statement, United States Sentencing Guideline ("Guideline") § 1B1.13, was promulgated before the First Step Act provided Defendants the ability to file a motion for compassionate release (and, without a quorum, the Sentencing Commission has been unable to amend the Guidelines post-First Step Act). The Ninth Circuit has determined that the Guidelines lack any policy statement "applicable" to a defendant-filed motion for compassionate release. *United States v. Aruda*, ___ F.3d. ____, 2021 WL 1307884 (9th Cir. April 8, 2021). This court is thus empowered to consider any extraordinary and compelling reason that warrants a sentence reduction. In making this determination, § 1B1.13 "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id*. at *4.

**B.     Extraordinary and Compelling Reasons Do Not Warrant Release**

Defendant bears the burden to establish extraordinary and compelling reasons that warrant compassionate release. *See, e.g.*, *United States v. Bogema*, 2020 WL 6150467, at *3 (D. Haw. Oct. 20, 2020) (citations omitted).

Here, Defendant argues that his age, weight, and medical conditions place him at elevated risk for "serious illness or death should he contract COVID-19." ECF No. 98-1 at PageID # 783. Defendant also claims that FCI La Tuna

does not provide a safe environment to protect against COVID-19 and that he has taken full advantage of post-sentencing rehabilitation programming opportunities while incarcerated. *Id*. at PageID ## 783, 794-95, 800.

The COVID-19 pandemic alone does not constitute an extraordinary and compelling reason for release. *See, e.g.*, *United States v. Drummondo-Farias*, 460 F. Supp. 3d 1008, 1014 (D. Haw. 2020) ("Additionally, '[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement[.]'") (quoting *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020)); *United States v. Brooks*, 491 F.Supp.3d 33, 37 (W.D. Pa. 2020); *United States v. Mitchell*, 471 F. Supp. 3d 1130, 1138 (W.D. Wash. 2020). Further, Defendant has not shown that the hardships he faces at FCI La Tuna differ significantly from any other BOP facility. The BOP reports that of 907 inmates tested at FCI La Tuna, 548 have tested positive for COVID-19.[1] *See* https://www.bop.gov/coronavirus/ (COVID-19 resource page) (last visited April 19, 2021). But at present, FCI LA Tuna is doing much better—BOP presently reports that 16 inmates and zero staff members have "confirmed active cases" of COVID-19. *See id*. Although the court recognizes that COVID-19 cases

---

[1] FCI La Tuna currently houses 911 total inmates (146 at the Camp and 765 at the FCI). *See* https://www.bop.gov/locations/institutions/lat/ (last visited April 19, 2021).

could rise again at FCI La Tuna, the institution has shown great improvement over the past months. And as COVID-19 vaccinations continue to be administered, the threat of COVID-19 outbreaks is anticipated to decrease over time.[2]

Defendant lists three medial conditions that increase his risk relating to COVID-19: prediabetes/diabetes; hypertension; and hyperlipidemia. ECF No. 98-1 at PageID # 783. First, as Defendant admits, his most recent Hemoglobin A1C level places him "in the prediabetes range." *Id*. at Page ID # 789; *see also* ECF No. 98-8 at Page ID # 837. Although the Centers for Disease Control ("CDC") states that Diabetes type 1 or type 2 "can make you more likely to get severely ill from COVID-19," *see* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited April 19, 2021), Defendant does not presently suffer from either Diabetes type 1 or type 2.

As for hypertension, the CDC states that "possibly high blood pressure (hyptertension) can make you more likely to get severely ill from COVID-19." *Id*. And as for hyperlipidemia, it is not listed by the CDC as a COVID-19 risk factor.

---

[2] As of April 19, 2021, the FCI La Tuna as completed full inoculations of 135 inmates and 164 staff members. *See* https://www.bop.gov/coronavirus/ (COVID-19 resource page) (last visited April 19, 2021). As discussed below, Defendant has been vaccinated.

Defendant also claims that at 5'6" tall and a current weight of 164 pounds, he has a body mass index ("BMI") of 26.5.  *See* ECF No. 98-1 at Page ID # 791; *see also* https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm (last visited April 19, 2021).  According to the CDC, being overweight (which includes a BMI between 25 and 30) "can make you more likely to get severely ill from COVID-19.  The risk of severe COVID-19 illness increases sharply with elevated BMI."  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited April 19, 2021)

Also, at 58 years old, Defendant is not in the highest risk age group, although he certainly faces an elevated risk.  As stated by the CDC:

> The risk for severe illness from COVID-19 increases with age, with older adults at highest risk.  For example, people in their 50s are at higher risk for severe illness than people in their 40s.  Similarly, people in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s.  The greatest risk for severe illness from COVID-19 is among those aged 85 or older.

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited April 19, 2021).

In addition to these considerations, Defendant has been vaccinated for COVID-19 while in BOP custody.[3] As a result, his risk of infection in greatly diminished. *See When You've Been Fully Vaccinated*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (last visited Apr. 19, 2021). As stated by the CDC, "[c]urrently authorized vaccines in the United States are highly effective at protecting vaccinated people against symptomatic and severe COVID-19. Additionally, a growing body of evidence suggests that fully vaccinated people are less likely to have asymptomatic infection and potentially less likely to transmit SARS-CoV-2 to others." *Interim Public Health Recommendations for Fully Vaccinated People*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html (last visited April 19, 2021). Given this understanding, Defendant's claim that he may contract COVID-19 is speculative. This ground, standing alone, is a basis to deny his Motion for Compassionate Release.

Regardless, taking into account Defendant's age, risk factors, and that he has been vaccinated, the court concludes that he has failed to demonstrate that extraordinary and compelling reasons warrant compassionate release.

---

[3] Although the medical records do not appear to reflect the date of his vaccination(s), Defendant's motion states that "Mr. Sakuma reports that he has recently been vaccinated for COVID-19." ECF No 98-1 at Page ID # 795.

## C.   Section 3553(a) Factors

At the next step, the court must examine the applicable § 3553(a) factors. And, after careful review, the court determines that a consideration of those factors weighs heavily against Defendant's release. *See, e.g.*, *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020) (stating that compassionate release is discretionary and may be refused after a consideration of the applicable § 3553(a) factors). Thus, even if Defendant had demonstrated that the required extraordinary and compelling reasons exist to justify compassionate release, the court would deny his Motion based on a consideration of the § 3553(a) factors.

As relevant to this case, the § 3553(a) factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant";[4] and (2) "the need for the sentence imposed . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C.

---

[4] As part of the § 3553(a) analysis, the court considers Defendant's post-offense conduct, including his rehabilitation while in custody. *See Pepper v. United States*, 562 U.S. 476, 491 (2011).

§ 3553(a)(1)-(2).  And, under the parsimony clause, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2).  18 U.S.C. § 3553(a).

Here, Defendant trafficked in substantial quantities of methamphetamine.  *See* Presentence Investigation Report ("PSR") ¶¶ 10-21, ECF No. 78 at PageID ## 640-43.  For Guideline purposes, Defendant was held responsible for 3,398 grams of "ice."  PSR ¶ 27, *id*. at PageID # 644.  But at the time of his arrest, Defendant admitted that he had been distributing drugs for "the past 25 years or longer," and he estimated "that he sold 25 pounds of methamphetamine per month for the past 7 years, and earned $7,000,000 throughout his distribution career."  PSR ¶ 16, *id*. at PageID # 642.  Further, Defendant has a prior conviction for robbery in the second degree.  PSR ¶ 46, *id*. at PageID ## 648-49.

The court recognizes that Defendant has served a substantial portion of his sentence, with a projected release date in July 2025.  *See* https://www.bop.gov/inmateloc/ (last visited April 19, 2021).[5]  The court is likewise aware that

---

[5] When evaluating the § 3553(a) factors, courts consider the amount of time remaining on a defendant's sentence—whether short or long—in determining whether to grant compassionate release.  *See, e.g.*, *United States v. Pawlowski*, 967 F.3d 327, 330-31 (3d Cir. 2020); *Chambliss*, 948 F.3d at 694; *United States v. Maka*, 2020 WL 2544408, at *4 (D. Haw. May 19, 2020); *United States v. Bogdanoff*, 459 F. Supp. 3d 653, 659 (E.D. Pa. 2020); *United States v. Moskop*, 2020 WL 1862636, at *1-2 (S.D. Ill. Apr. 14, 2020); *United States v. Farmer*, 2020 WL 4057550, at *2 (N.D. Ohio July 20, 2020); *United States v. Steffey*, 2020 WL 3840558, at *1 (D. Nev. July 8, 2020).

Defendant has participated in well over 500 hours of BOP classes and programming, and has not received any disciplinary infractions.  *See* ECF No. 98-5 at PageID ## 810-14.

Nonetheless, considering all of the § 3553(a) factors, including the offense conduct, Defendant's criminal history, Defendant's programming in custody, and the time remaining on Defendant's sentence, reducing Defendant's sentence would undermine the goals of sentencing set forth in § 3553(a)(2).

In sum, the court finds that Defendant has not established the requisite extraordinary and compelling reasons to warrant compassionate release, and, even if he had, the court would deny the motion based on the relevant § 3553(a) factors.

## IV.  **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Reduce Sentence Under First Step Act (Compassionate Release), ECF No. 98, is DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 19, 2021.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Sakuma*, Cr. No. 12-00055 JMS, Order Denying Defendant's Motion to Reduce Sentence Under First Step Act (Compassionate Release), ECF No. 98